UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

RICHARD C. PLANK,

                Petitioner,

        v.                                        Case No.  13-C-1281

DENISE SYMDON, ADMINISTRATOR
OF THE DIVISION OF COMMUNITY CORRECTIONS,
AND HANS RUFENACHT, SUPERVISING AGENT,[1]

                Respondents.

---

DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Richard C. Plank petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that his state court conviction and sentence in Winnebago County Circuit Court were imposed in violation of the Constitution. Plank was convicted of two counts of battery and one count of disorderly conduct and received consecutive sentences of three years of imprisonment, ninety days in jail, and four years of extended supervision.

      Plank was charged with battering his live-in girlfriend, Sandra Ashauer, by beating her on the head and face as well as slicing her leg with a knife. Prior to trial, Plank was represented by Attorney Kate Seifert. However, less than a week before trial, Seifert was allowed to withdraw. Plank represented himself at a bench trial with Seifert as stand-by counsel. Testifying at trial were Ashauer, four police officers, and Plank. Plank's defense was that Ashauer cut herself after he announced he was moving to Duluth, and that he did not break Ashauer's nose because she had no facial bruising or swelling. At the end of the

---

[1]Plank was released from Stanley Correctional Institution shortly after he filed this case. He was released to supervision, and counsel for the State of Wisconsin Department of Justice indicates that Symdon and Rufenacht are the proper responding custodians. (Doc. 19.)

trial, the trial judge ruled immediately and found Plank guilty on all counts. In pertinent part, the trial judge stated:

> [I]t's a test of credibility of witnesses and also the evidence that supports that testimony. And the complaining witness, Miss Ashauer, has offered some testimony that essentially you beat her and you cut her and bruised her, and the pictures and testimony that she gave in the courtroom I find substantiate that. And I find her testimony to be credible, believable, and I also find it to be that standard of beyond a reasonable doubt. I'm satisfied that you beat her and you broke her nose and that you caused numerous bruises to her arm, her thigh, her face, the genital area. And as a second count – and the chin. And also as a second count, I would also find that there's evidence beyond a reasonable doubt that you in some fashion took an implement – and I realize that an implement was not found – and cut her to the tune of needing 18 stitches. And I'm not certain exactly how much blood there should or should not have been, but I am satisfied that those elements have been met, that that was without consent or permission, it was substantial. I find your testimony to be incredible, at best. That means not believable. The fact that your evidence or your testimony is that this is a pre-existing broken nose, this was a self-inflicted knife wound, that you acted as far as your foot fight with her in self-defense, and the bruises were photoshopped to make them look like more severe than they are I find to be incredible, not believable
> . . . .

(Doc. 20 Ex. T at 133–34.)

Plank filed a post-convictiion motion alleging ineffective assistance of counsel by Seifert, and chose to be represented by counsel again. New counsel, Attorney Matthew Goldin, was appointed. Thereafter, Seifert testifed at a *Machner*[2] hearing regarding the ineffective-assistance-of-counsel claim. At the end of the *Machner* hearing the court denied Plank's motion and proceeded immediately to sentencing. In denying the motion, the trial judge stated in pertinent part: "Mr. Plank is not a credible witness. I don't believe his testimony. I believe Miss Seifert that she did share discovery with him." (Doc. 20 Ex. V at 42.) The trial judge found that Seifert had committed no deficient conduct and that

---

[2] *See State v. Machner*, 92 Wis. 2d 797 (Ct. App. 1979).

there was no reasonable probability that the outcome of the trial was affected in any way—the alleged ineffective-assistance issues were "minimal, at best, as far as effecting [sic] the outcome of this case." (*Id.*)

Plank appealed, but counsel filed a no-merit brief, to which Plank responded. The Wisconsin Court of Appeals found no meritorious issues and dismissed the appeal. Afterward, Plank unsuccessfully sought review in the Supreme Court of Wisconsin. The pending habeas petition followed.

## STANDARD OF REVIEW

A petition seeking a writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in state court unless the resolution of that claim "gave rise to a decision that was contrary to, or involved an unreasonable application of, clearly established" U.S. Supreme Court law or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state-court decision is "contrary to" Supreme Court law if the state court arrived at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on facts that are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court law if the state court identified the correct governing legal principle but unreasonably applied that principle to the facts of the case. *Id*. at 407-09, 413. Review under § 2254(d)(1) (the "contrary to" or "unreasonable application" provision) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180–82 (2011).

3

A state court's fact determinations are presumed correct and a petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A federal court analyzing the "unreasonable application" prong of § 2254(d)(1) "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. This standard is a "substantially higher threshold" than whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); see *Cullen*, 563 U.S. at 182 (stating that the standard of § 2254(d) is difficult to meet and highly deferential, demanding that state-court decisions receive the benefit of the doubt). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011).

The relevant state court decision is that of the last court to review the issue. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009). The standard of review in § 2254(d) applies even where the state court issued only a summary denial. *Cullen*, 563 U.S. at 187. In reviewing a summary denial, the habeas court must determine what arguments or theories could have supported the state court's decision and ask whether fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of the U.S. Supreme Court. *Id*. at 188.

A state prisoner must have presented his claim through a complete round of state-court review or else be deemed to have committed procedural default. *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). This court may examine the merits of a procedurally

4

defaulted claim only if the petitioner (1) demonstrates cause for his procedural error and prejudice as a result, or (2) shows that the failure to consider the claim will result in a fundamental miscarriage of justice. *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016). "Cause" means an objective factor, external to the defense, that impeded or precluded the petitioner's ability to pursue the claim in state court. *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015). "Prejudice" means an error that "so infected the entire trial that the resulting conviction violates due process." *Id.*; *see Salberg v. United States*, 969 F.2d 379, 383 (7th Cir. 1992). The miscarriage-of-justice exception requires a petitioner to convincingly establish actual innocence through new, reliable evidence (meaning evidence not presented at trial rather than newly discovered). *Jones*, 842 F.3d at 461 (citing *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1929 (2013)). Such actual-innocence arguments are rarely successful, as the petitioner must persuade the court that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (quoting *McQuiggin*, 133 S. Ct. at 1928). The court must consider all of the evidence, regardless of its admissibility, and "'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Jones*, 842 F.3d at 461.[3]

## DISCUSSION

In his petition, Plank asserted four grounds for relief; the court ordered a response to those grounds. Although the court said it would accept Plank's supplements that had

---

[3]This "procedural" actual innocence is not the same as substantive actual innocence, the latter of which means new evidence that convinces the court that the conviction is constitutionally intolerable even if the product of a fair trial. *Jones*, 842 at 462. Instead, the petitioner must establish sufficient doubt about guilt to undermine confidence in the conviction without the assurance that the trial was untainted by constitutional error. *Id.*

5

been filed between the opening of this case and issuance of its screening order, the court meant that it would consider them in connection with the claims in the petition; the petition was not amended. Thereafter, Plank's filings in this proceeding raised additional possible issues. (*See, e.g.,* Doc. 24 at 1, 4, 6, 9 (discussing, e.g., a missing written statement by Ashauer, the effectiveness of appellate counsel, Seifert's alleged failures to investigate or obtain an expert opinion; Doc. 31 (asking the court to consider the merits of a November 2015 motion to vacate that he filed in the state-court criminal case).) However, again, the petition was never amended, and attempts to add other claims after approximately February 2014, would have been barred by the one-year statute of limitations. *See Rodriguez v. United States*, 286 F.3d 972, 980–82 (7th Cir. 2002) (finding that an amendment to a motion under 28 U.S.C. § 2255 relates back to the original petition only if the untimely claim arises from the same set of facts as a timely claim rather than from separate conduct). Therefore, this court will address only the four grounds for relief set forth in the petition.

A.     Alleged perjury

        Plank asserts that Ashauer and two police officer witnesses committed perjury and that the assistant district attorney presented that testimony improperly without correction. The prosecution's use of false evidence or failure to correct false evidence at trial constitutes a denial of due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* To prove a violation of *Napue*, Plank must show (1) that false testimony was given at trial, (2) that the prosecution knew or should have known that

6

the testimony was false, and (3) a likelihood that the false testimony affected the verdict. *United States v. Freeman*, 650 F.3d 673, 678 (7th Cir. 2011).

Plank faces two problems with this claim. First, he procedurally defaulted the claim by not raising it in a Wis. Stat. § 809.30 post-conviction motion before the trial court. Under § 809.30(2)(h), a motion for post-conviction relief in the trial court is required regarding any issue not raised at trial. Plank filed a motion for post-conviction relief alleging ineffective assistance of counsel; but the motion did not argue that the prosecutor, Albrecht, or any other state representative committed or condoned perjury. (*See* Doc. 20 Ex. E.) The first time that Plank raised the claim was in his responses to appellate counsel's no-merit brief on appeal (*see* Doc. 20, Ex. G at 1–5), and that was too late.

Additionally, Plank provides no basis for a finding that there was cause for the default. Moreover, he cannot establish prejudice or a miscarriage of justice because of his second problem: the claim fails on the facts. Plank's contention that Ashauer lied on the stand is a continuation of his theory at trial that his version of events, rather than Ashauer's, should have been believed. Ashauer testified that she had been punched in the face and suffered a broken nose, but Plank argues that photographs show that her face was "pristine." Further, Ashauer testified that Plank cut her while she lay in bed, where no blood was found, but Plank contends she cut herself in the bathroom.

Ashauer's and Plank's versions of the facts were presented to the trial judge, who found Ashauer, not Plank, credible. Although Plank continues to dispute Ashauer's testimony, the trial judge found Ashauer's testimony to be the truth, and the judge's fact determinations are presumed correct. § 2254(e)(1). Mere conflicting testimony or other evidence does not rebut that presumption by clear and convincing evidence; otherwise

7

virtually no findings of fact would stand. Further, Plank presents nothing indicating that even if Ashauer lied, the prosecutor knew or should have known of any falsity.

Regarding the officers' testimony, Plank asserts that Officer Albrecht lied in a report wherein he stated that he overheard Ashauer tell a paramedic that Plank injured her because he was jealous. (*See* Doc. 1 at 7; Doc. 21 at 5.) Also, Plank argues that Albrecht lied about seeing muscle in Ashauer's wound and blood-soaked clothing and towels in the bathroom. (Doc. 21 at 21.) In addition, Plank contends that Officer Oleszak testified falsely regarding Plank's toe being cut. (*Id.*) However, Plank has failed to establish that the officers' testimony was intentionally false rather than the product of their recollections. And importantly, the matters of which Plank complains concern immaterial points; there is no likelihood that any of this testimony affected the verdict. Ashauer's statement to paramedics does not appear to have been part of the evidence at trial. Whether the cut on Ashauer's leg affected muscle as well as fatty tissue could not have affected the verdict. Medical records concerning the cut were admitted, photos appear to have shown Ashauer's wound and the bloody underwear in the bathroom, and testimony covered the amount of blood in the residence and on Plank's toe. (*See* Doc. 20 Ex. T at 13–14 (lack of blood in the bedroom).) Thus, the trial judge could determine the facts for himself; the particular testimony challenged by Plank added little to nothing.

In his brief, Plank argues that the prosecutor falsely stated that page six of Dr. Duscher's report showed that Ashauer suffered a minimally displaced nasal bone fracture. (Doc. 21 at 16.) However, the prosecutor's direction to the judge regarding where to find information in the report did not constitute evidence. And even if that direction was incorrect (as that information appears to this court to be on pages three and four of Dr.

8

Duscher's report), nothing suggests that the prosecutor committed anything other than a mistake.

For these reasons, this ground for relief will be denied.

B.    Withholding of exculpatory evidence

Plank claims that exculpatory evidence was withheld from him because he was provided a compact disk of photographs just five or six days before trial but, because he was in jail, Plank had no means of viewing the disk or developing photographs from it. Additionally, Plank maintains that a lab report and doctor's report were withheld from him. Under *Brady v. Maryland*, 373 U.S. 83 (1963), a state violates the right to due process if it withholds evidence that is favorable to the defendant and that is material to his guilt or punishment.  *Smith v. Cain*, 132 S. Ct. 627, 630 (2012).

Plank's *Brady* claim fails.  The record establishes that the *state* did not withhold the disk from Plank.  Plank's attorney, Kate Seifert, possessed the disk, apparently for some time, but gave the disk to Plank only when she was allowed to withdraw and Plank was set to proceed to trial representing himself.  (*See* Doc. 20 Ex. E; Ex. V at 19.)  The doctor's report and lab report also appear to have been in Seifert's possession and thus were not withheld by the state.  (*See* Doc. 20 Ex. E.)  Therefore, no *Brady* violations occurred.  And Plank has failed to point to any U.S. Supreme Court case that applies *Brady* to defense counsel.

Further, Plank admits that he was able to view the disk while in jail before trial, had hard copies of half of the photographs by the time of trial, and had limited time to work with the photographs.  (Doc. 20 Ex. T at 8–9, 12; *see* Doc. 1 Ex. 1 response to no-merit at 7.)

9

Notwithstanding that Plank was not able to print off additional photos for use at trial, the trial judge, who was the trier of fact, said he twice viewed the entire disk of about sixty photos, and Plank walked the judge through some of them. (Doc. 20 Ex. T at 100, 112, 128–30, 135.) Therefore, any failure to have the photographs in Plank's hands at an earlier time was not material to the verdict.

The lab report may have been withheld from Plank. (*See* Doc. 20 Ex. T at 106; Doc. V at 20–23.) The lab report indicated that no blood was detected on any of the four knives police took from Plank's home the night that Ashauer was cut and that an insufficient amount of DNA was detected so testing was not conducted. (Doc. 1 Ex. 1 lab report.) Thus, the report was exculpatory. However, the report was not *material* to Plank's guilt. Even though Plank may not have seen the report prior to trial, his questions to Officer Oleszak brought out the report's results that no blood evidence or DNA evidence was found on the four knives. (Doc. 20 Ex. T at 106, 113.) Further, Office Oleszak testified that he took two of the knives from the house and did not see any blood on them. (*Id.* at 105.) The trial judge assumed that none of the knives taken by police was used to slice Ashauer's leg. (*See* Doc. 20 Ex. T at 134 (finding that Plank "in some fashion took an implement—and I realize that an implement was not found—and cut her to the tune of needing 18 stitches").) Therefore, the lab report merely supported a point that was found in Plank's favor. Consequently, Plank fails to persuade this court that had he seen the lab report before trial the result would have been affected.

Construed broadly, Plank's claim is that *Seifert* withheld evidence from him, and that can be considered a claim of ineffective assistance of counsel respecting her pretrial

10

conduct. Plank raised that issue in his post-convictiion motion (justifying the *Machner* hearing) and in no-merit briefs. (*See* Doc. 20 Ex. C at ii, 15–20, 32–33.) However, the Wisconsin Court of Appeals rejected the argument, applying the correct U.S. Supreme decision, *Strickland v. Washington*, 466 U.S. 668 (1984). (Doc. 20 Ex. I at 2.) After correctly setting forth the *Strickland* standard, the court wrote:

> Plank alleged dozens of deficiencies in Seifert's representation. As an example, he asserted that she failed to investigate his desired defenses and to retain experts to support them. Plank does not allege with specificity what any investigation would have revealed, however, or how it would have altered the outcome of the case. As another example, Plank alleges that Seifer[t] "denied and deprived [him] of his full due process rights to a 'fair trial' under the 'color of law.'" Challenges to counsel's representation must be based on more than speculation.
>
> . . . . Our review of the record discloses no arguable basis for a meritorious ineffectiveness claim.

(Doc. 20 Ex. I at 2–3 (citations omitted).) This issue was raised again in Plank's petition for review (Doc. 20 Ex. J at 1–2), though the Supreme Court of Wisconsin denied that petition (Doc. 20 Ex. K).

Because the Wisconsin Court of Appeals cited to the correct standard from *Strickland*, its decision was not "contrary to" Supreme Court law. Moreover, the appellate court did not apply *Strickland* unreasonably. Although the Wisconsin Court of Appeals did not specifically mention the alleged discovery failures Plank pursues here, its decision is reasonably read as including the presently argued deficiencies among the "dozens" that Plank argued on appeal and the general issue of a defendant's right to a fair trial. Overall, the Wisconsin Court of Appeals held that Plank failed to establish deficient conduct by trial counsel or resulting prejudice. Hence, this court cannot find that conclusion was so lacking

11

in justification that there was an error "beyond any possibility for fair-minded disagreement." *See Harrison*, 562 U.S. at 102-03.

Plank adds an argument that the trial judge said he admitted the disk of photographs into evidence and reviewed the entire disk, but the appellate court refused to look at the entire contents of the disk, possibly raising a due-process issue. Shortly before affirming Plank's conviction, the Wisconsin Court of Appeals on June 4, 2012, denied Plank's "Motion to Force Compliance with Court Order." (Doc. 1 Ex. 1.) The court wrote that based on its review of the trial transcript,

> only some of the fifty-five photographs on the CD were admitted into evidence at trial. Comparing those admitted into evidence with the photos Plank indicates were included on the CD he received persuades us that counsel provided him with those photos that are in the trial court record. For purposes of his appeal, Plank is limited to those materials.

(Doc. 1 Ex. 1 at 2.) Plank's motion sought an order compelling the Winnebago County district attorney's office to provide him with a copy of the fifty-five photo disk, but the court declined. (*See id.* at 1–2.) Although Plank argues that the appellate court did not review all of the photographs on the disk, it appears that none of the photographs, or failure of the appellate court to review all of them, played any role in that court's decision. Therefore, this ground for relief will be denied.

C.    Insufficiency of the evidence

Plank submits that the trial judge, in rendering the guilty verdict on the two battery counts, ignored medical evidence and inconsistencies in testimony. As relief, Plank asks this court to order a "new, fair trial" (Doc. 1 at 13) or to throw out the battery counts. The court interprets this as an insufficient-evidence claim.

12

The due process clause is violated if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt on the evidence presented. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).  In analyzing this claim, the court must view all evidence from trial in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 318–19.  It is the responsibility of the fact finder to resolve conflicts in testimony, weigh the evidence, and draw conclusions from the evidence admitted at trial.  *Id.* at 319.  The reviewing court may set aside the fact finder's verdict on the ground of insufficient evidence only if *no* rational trier of fact could have agreed.  *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012).  Because of the deference due the fact-finder's decision and the standard in this habeas case, the decision of the state court is due double deference by this court.  *See id.*

The Wisconsin Court of Appeals addressed this claim on the merits.  Therefore, to succeed on this claim Plank must demonstrate that the appellate court's decision is contrary to, or an unreasonable application of, *Jackson*.

In rejecting this claim, the Wisconsin Court of Appeals stated:

When reviewing a conviction for sufficiency of the evidence, we will not reverse "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

Plank, Ashauer and an investigating officer testified.  Plank claimed that Ashauer cut herself, that medical records were incorrect and that photos of her injuries were "doctored."  There were inconsistencies between Plank's and Ashauer's testimonies and the officer testified that Ashauer's account of the event changed throughout the night.  The court expressly found that Plank was not a credible witness.  The trier of fact determines issues of credibility, weighs the evidence and resolves conflicts in testimony.  Viewing

13

the evidence most favorably to the State and the conviction, there is no meritorious argument to be made that the evidence is insufficient to support the finding of guilt.

(Doc. 20 Ex. I at 3–4 (citation omitted).) Although the Wisconsin Court of Appeals cited to *Poellinger* rather than *Jackson*, a state court need not cite to the applicable Supreme Court case as long as the state-court precedent cited agrees with it. *Adams v. Bertrand*, 453 F.3d 428, 432 (7th Cir. 2006). The Seventh Circuit has held that the *Poellinger* standard "effectively duplicates the Supreme Court standard for sufficiency challenges" under *Jackson*. *Id.* at 432. Therefore, the Wisconsin Court of Appeals pointed to the correct legal standard and its decision was not "contrary to" *Jackson*.

Further, this court cannot say that the Wisconsin Court of Appeals' application of *Jackson* through *Poellinger* was objectively unreasonable. Plank contends that the evidence was insufficient to prove that he, as opposed to Ashauer, inflicted the knife wound on Ashauer's thigh. But Plank's argument is a mere disagreement with the trial judge's credibility determinations and factual findings.

Plank testified that he was sleeping when Ashauer woke him up by yelling from the bathroom. (Doc. 20 Ex. T at 122.) He went to the bathroom, saw Ashauer with blood in her underwear, noticed the cut, and then called 9-1-1. (*Id.* at 122–23.) He testified that he did not cut Ashauer. (*Id.* at 126, 127.) On the other hand, Ashauer testified that Plank sliced her leg while she lay in bed and told her she deserved it. She denied the possibility that she had cut herself. (*Id.* at 23, 49.) The trial judge found Ashauer "to be credible, believable, and . . . to th[e] standard of beyond a reasonable doubt." (*Id.* at 134.)

14

Further, Plank contends that the trial judge failed to consider that Ashauer changed her testimony. Indeed, Officer Albrecht testified that Ashauer's recounting of events was initially vague and then had changed, and Ashauer admitted at trial that she could not remember certain things. (Doc. 20 Ex. T at 34–37, 66–67.) Also, Ashauer did not see Plank use the knife. (Doc. 20 Ex. T at 37, 50.) And evidence was introduced that Ashauer was intoxicated the night of the incident, with a blood-alcohol level of approximately .305. (Doc. 20 Ex. T at 39, 78–79; Doc. 23 Ex. B at 3.) But nothing suggests that the trial judge failed to take that evidence into account when finding Ashauer credible. Additionally, Officer Albrecht testified to *consistencies* in Ashauer's testimony. (Doc. 20 Ex. T at 69.) Moreover, Officer Scheppf testified that Plank's story changed and conflicted several times as well (Doc. 20 Ex. T at 83–84[4]), and the trial judge found Plank *not* credible. Ashauer's testimony supported the verdict, and great deference is given to the trial judge's credibility determination. Thus, the Wisconsin Court of Appeals' rejection of Plank's argument was not an unreasonable application of *Jackson* as to the count involving the knife wound.

As for the count charging Plank with causing Ashauer's facial injury, the state introduced certified medical records, including a report by Dr. Paul Duscher indicating that Ashauer "suffered a minimally displaced nasal bone fracture." (*Id*. at 99; Doc. 23 Ex. B at 3, 4.[5]) Further, Ashauer testified that Plank hit her in the head and into her face, breaking

---

[4]Plank explained that if his statements changed, "they weren't changing fundamentally. I was adding to it as my trust level increased, you know, as I trust [the police]." (Doc. 20 Ex. T at 126.)

[5]Plank attached page 2 of this emergency-department medical report to his petition as part of Exhibit 1, and he included page 1 as part of Document 8, but he failed to provide the full four-page report. Respondent provided the full report, which she says was an exhibit at trial, with her response brief. (*See* Doc. 23 Ex. B.)

15

her nose. Also, she denied suffering a broken nose prior to the date of the incident. (Doc. 20 Ex. T at 23–25, 34–35, 56–57.)

Plank contends that the trial judge failed to review the medical evidence and that Ashauer's photographs show no facial bruising. And he testified that he never hit Ashauer in the face. (Doc. 20 Ex. T at 126.) However, notwithstanding that photographs showed no bruising around Ashauer's nose, the medical evidence and Ashauer's testimony supported the judge's decision. Hence, the Wisconsin Court of Appeals' rejection of Plank's insufficient-evidence argument was not an unreasonable application of *Jackson*. Thus, this ground for relief will be denied.

D.    Handcuffs and prison clothing

Plank's last claim is that at trial he was forced to wear prison or jail clothes and handcuffs attached to a waist chain, causing prejudice and problems with his self-representation. Regarding possible prejudice, Plank points to no U.S. Supreme Court case holding that prison garb or handcuffs violates a defendant's rights during a *court* trial. Supreme Court cases concerning prison garb and handcuffs have addressed the possible impact on a jury, not a judge. *See Deck v. Missouri*, 544 U.S. 622, 629 (2005); ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of discretion, that they are justified by a state interest specific to a particular trial."); *Estelle v. Williams*, 425 U.S. 501 (1976); *United States v. Zuber*, 118 F.3d 101, 102 (2d Cir. 1997) ("We hold that the rule that courts may not permit a party to a jury trial to appear in court in physical restraints . . . does not apply in the context of a non-jury sentencing hearing."); *United States v. Sanders*, No. CR-10-3-

16

BLG-JDS-01, 2013 WL 3337366, *3 (D. Mont. July 2, 2013) ("Sanders is correct that the United States Supreme Court determined that a defendant['s] rights may be violated when a *jury* is allowed to view [him] in shackles or prison garb, but this Court found no authority that this conclusion also applies to bench trials.").  As the Supreme Court noted in *Deck*, "Blackstone and other English authorities recognized that the rule did not apply at the time of arraignment, or like proceedings before the judge.  It was meant to protect defendants appearing at trial before a jury."  544 U.S. at 626 (quotation marks and citations omitted).  Without a Supreme Court case on point, Plank cannot establish that any unreasonable application of Supreme Court law occurred.  *See* § 2254(d)(1).

Plank's argument extends beyond prejudice based on appearance, though.  He contends that the handcuffs attached to the waist belt[6] interfered with his self-representation, thus violating his due process rights.  However, he procedurally defaulted this claim by failing to include it in his post-conviction § 809.30 motion in the trial court.  Also, Plank failed to raise this issue on appeal.  (*See* Doc. 20 Ex. E.)

Notably, Plank does not provide any cause for such failure.  Nor can he establish prejudice or a miscarriage of justice.  Although at trial he complained about the handcuffs inhibiting his actions, adjustments were made.  For example, when Plank had difficulty showing Ashauer a document (saying "Your Honor, you should try this, you got to be like Harry Houdini"), the judge had Plank reference the page and then the judge handed the page to Ashauer.  (Doc. 20 Ex. T at 31.)  Moreover, Plank does not point to any Supreme

---

[6]The record indicates that a deputy attached a second set of handcuffs to Plank's first set to allow Plank more freedom of movement.  (Doc. 20 Ex. T at 4–5.)  However, Plank contends that he could barely reach the defense table and could not write or go through his papers properly.  (Doc. 24 at 3.)

17

Court case supporting his claim. And he fails to describe how he would have handled his defense differently, how he would have examined or cross-examined a witness differently, or how he was impaired in defending himself. As a consequence, this last ground for relief will be denied.

## CERTIFICATE OF APPEALABILITY

An unsuccessful habeas petitioner has no right to appeal the denial of a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003). Before a habeas petitioner may appeal to the Seventh Circuit, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 335-36.

A certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner makes a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The certificate of appealability determination is not a second assessment of the merits. *See Miller-El*, 537 U.S. at 327, 336. Instead, the determination requires only a threshold inquiry into the debatability of the district court's decision—"an overview of the claims in the habeas petition and a general assessment of their merits." *Id.* at 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028

18

(7th Cir. 2003) ("[C]ertificates properly issue in many cases in which the prisoner will fail on full merits review.").  Further, at the certificate of appealability stage, the court need not definitively determine how the statutory clear-and-convincing evidence and unreasonableness standards apply, as such a determination delves into the substance of the appeal itself.  *Miller-El*, 537 at 342.  "The question is the debatability of the underlying constitutional claim, not the resolution of that debate."  *Id.*

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement.  28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029.  If the court denies the request for a certificate of appealability, it must state its reasons.  Fed. R. App. P. 22(b)(1).

When a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484.

When a district court dismisses a habeas petition based on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Section 2253 mandates that both showings be made before a certificate of appealability is granted.  *Id.* at 485.  The district court is allowed, and

19

indeed encouraged, to proceed first to the procedural issue if its answer is more apparent from the record and arguments. *Id.*

> Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted.

*Id.* at 484.

The court believes as to the grounds for relief that were procedurally defaulted (the perjury and handcuff/prison-garb issues) Plank does not deserve to proceed further. Its view is that the defaults (and Plank's inability to overcome them) would not be debatable among jurists of reason reviewing the record of this case. Further, the perjury claim on its merits would not be debatable among jurists of reason, as nothing in the record suggests that the prosecutor knew of false testimony, and the testimony of the police officers, even if false, rather than based on genuine recollections, made no difference in the outcome of Plank's trial before the court.

Additionally, this court believes that Plank's insufficiency ground would not be debatable among jurists of reason. The trial judge found Ashauer credible rather than Plank in this he-said/she-said case, and evidence supported his verdict notwithstanding Plank's disagreement with it.

Regarding the withholding of evidence, this court is persuaded that jurists of reason would not debate any *Brady* claim, as the record indicates that prior to the trial the state turned the evidence over to Plank's attorney, Seifert. However, to the extent that the claim can be interpreted as an ineffective-assistance-of-counsel claim against Seifert for her failure to provide Plank with the disk of photographs, doctor's report, or lab report earlier

20

than five or six days before trial, the court believes that reasonable habeas jurists could debate the issue, notwithstanding that most, if not all, would find that the Wisconsin Court of Appeals' decision was a reasonable application of *Strickland*.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that Plank's petition for a writ of habeas corpus is denied and this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability issues only as to the claim of ineffective assistance of counsel by Seifert regarding discovery materials, but is otherwise denied.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2017.

BY THE COURT

s/ C. N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE